UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
SEP 14 2012

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| DOMACH REATH, | CIV. 12-4053 |
| Plaintiff, | **ORDER**<br>Granting In Forma Pauperis Status and |
| vs. | Consolidating Cases |
| DOUGLAS WEBER, Warden, Department of Corrections, JENNIFER WAGNER, JESSICA COOK, AUTHER ALCOCK, AL MADSEN ASSIATED WARDENS, MOST CORRECTIONAL OFFICERS, PONTO | **REPORT and RECOMMENDATION**<br>To Dismiss on Screening |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| DOMACH REATH | CIV. 12-4059 |
| Plaintiff, | |
| vs. | |
| DOUGLAS WEBER, Warden, TROY ELISE, Coordinator, BENTIN, Captain, Senior Officer, PONTO, Associate Warden, UNITED STATES OF AMERICA, ALL ASSOCIATE WARDENS, MOST CORRECTIONAL OFFICERS, | |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff, Domach Reath, ("Reath") is an inmate at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota.[1] He filed these *pro se* civil rights law suits pursuant to 42 U.S.C. § 1983, seeking punitive damages in the amount of five hundred million dollars and "injunctive relief in the amount of two hundred million dollars and for the US Government to stop enforcement homosexuality . . .Stop sex slavery and stop the use of biological weapons on inmates

---

[1] It appears from a recent filing that Reath may have been released from the South Dakota State Penitentiary and transferred to the Minnehaha County Jail to serve a residual sentence. *See* CV 12-4053 Doc. 6, CV 12-4059, Doc. 7.

and stop killing inmates when the (sic) refuse sex slavery." CV 12-4053, Doc. 1.[2]

Because both of Reath's pending Complaints are nearly identical, it is ORDERED that they be consolidated for screening and all future purposes. It is likewise ORDERED that all future filings will be entered in CV 12-4053; only one filing fee shall be assessed and it shall be assessed in CV 12-4053.

The Court has, as it must, "screened" Reath's Complaints pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons more fully explained below, it is recommended to the District Court that Reath's Complaints be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(I) and 1915A(b)(1).

## BACKGROUND

### Reath's Previous Litigation

Mr. Reath is a well-known litigant in this District. In addition to his two pending cases, he has filed two previous civil rights cases. The first (CV 09-4131) was dismissed on Summary Judgment by Judge Piersol. The second (CV 10-4150) was dismissed on screening by Judge Battey pursuant to 28 U.S.C. §1915(e) for failure to state a claim upon which relief may be granted. Additionally, Mr. Reath has filed a civil rights case in the Northern District of Iowa, (CV 09-0073-LRR), which was likewise dismissed on screening by Judge Reade pursuant to 28 U.S.C. §1915(e) as frivolous/for failure to state a claim upon which relief may be granted.

### Reath's Pending Litigation

The named Defendants are not identical, but are similar in both Complaints: Warden Weber, "All Associate Wardens," "Most Correctional Officers," Associate Warden Ponto, and a host of other SDSP employees. Although somewhat difficult to follow, the claims in both Complaints are likewise similar. In the "Statement of Claim" portion of CV 12-4053 Reath alleges: "Torture

---

[2]The request for relief in CV 12-4059 is nearly identical: "I request the court to grant me $500,000,000 in punitive relief and $200,000,000 injunctive relief. I want the Court to stop inforcing (sic) sex slavery and the use of biological weapons on inmates and stop murdering inmates, stop prison politics and barr (sic) homosexualls (sic) for working prisons systems. Because that a crime itself."

2

physically, psychology, sexually Weber orders senior staffs and then orders regular correctional officers to send inmates in my cell and sexually assault me while I am drugged . . . the[y] refuse me protective custody." In the "Cause of Action" section of CV 12-4059, Reath alleges that several SDSP employees refused his requests for protective custody. Reath also alleges, "they've been sending inmates to come start problems with me until I relize (sic) that it was the government that I was fighting. Ponto had been sending inmates at me just like Alcock and A.W. Young have been doing. The whole US Government was violated my rights. They violated my rights in every way. This action resulted in numerous of sexual assaults." Reath sent a letter to the Court (*see* CV 12-4053 Doc. 6, CV 12-4059, Doc. 7) in which he further explains his theory:

> I was transfer to the County Jail in Minnehaha County Jail in Sioux Falls. Where I was held on lock down by one of the Homo Sexual Associate Wardens--Young--whom was torturing me in prison, he was sent ahead of me from prison to be the warden at Jail so he could continue the torture or sex slavery to my next resident. He had denied me everything and is continues, the hate crimes, racial discrimination. He denied me everything and the whole US Government is supporting him in my distroying (sic) me. Why don't you the federal government do something about it. Is it not because you the US government the ones doing it to me. . . . .Your against me because you are homosexuals, racist and evil.

Finally, it is noted that Reath's allegations in the pending Complaints bear a similarity to both of the civil rights Complaints which have been dismissed upon screening (CV 09-00073-LRR in the Northern District of Iowa and CV 10-4150-RHB in the District of South Dakota). In the Iowa case, Reath alleged he was sexually assaulted by a fellow inmate while incarcerated in Iowa but the guards did nothing to help him. In the South Dakota case, Reath alleged Warden Weber "and his underlings," apparently in an effort to induce or activate Reath's tuberculosis, drugged his food and drinks.

## DISCUSSION

Reath's Complaints should be dismissed on screening for two reasons: frivolousness pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(I) and 1915A(b)(1) and failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a). These reasons for dismissal are discussed in turn below:

1. **Reath's Complaints Are Frivolous Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).**

The Court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg*

3

*by Rosenberg v. Crandell,* 56 F.3d 35, 36 (8th Cir. 1995). Also, "although liberally construed, a pro se complaint must contain specific facts supporting its conclusions." *Allen v. Purkett,* 5 F.3d 1151, 1153 (8th Cir. 1993)(citations omitted). A plaintiff "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965, (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart,* 755 F.2d 657, 663 (8th Cir. 1985). *Bell Atlantic* requires a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965. *See also, Abdullah v. Minnesota,* 2008 WL 283693 (Feb. 4, 2008) (citing *Bell Atlantic* noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory).

It has long been recognized that "civil rights pleadings should be construed liberally." *Frey v. City of Herculaneum,* 44 F. 3rd 667, 671 (8th Cir. 1995). The complaint, however, must at the very least contain facts which state a claim as a matter of law, and must not be conclusory. *Id.* Broad and conclusory statements unsupported by factual allegations are not sufficient. *Ellingburg v. King,* 490 F.2d 1270 (8th Cir. 1974). Finally, although *pro se* complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004). The Court is not required to supply additional facts for a *pro se* plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *Id.*

The United States Supreme Court has also explained that the screening procedure of §1915(e)[3] "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the latter class . . .are claims describing fantastic or delusional scenarios, claims which federal district judges are all too familiar." *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). The Court explained that the district courts may, in their discretion, dismiss on screening prisoner complaints as frivolous pursuant to § 1915(e) if the facts alleged are

---

[3]In its opinion, the Supreme Court referred to 28 U.S.C. § 1915(d). The in forma pauperis statute has since been revised and the former section (d) is now section(e).

4

"clearly baseless . . . fanciful . . . . fantastic . . . . delusional . . . irrational. . . . or . . . wholly incredible. . . . An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely." *Id.* 504 U.S. at 1733, 112 S.Ct. at 33. It is with these standards in mind that Reath's Complaints are carefully considered.

As a general rule this Court does not consider allegations of prison sexual assault fanciful, delusional or any of the other adjectives which would qualify for a § 1915(e) frivolousness dismissal. Considered in their entirety, however, Reath's Complaints are "clearly baseless . . . fanciful . . . .fantastic . . . .delusional . . . irrational. . . .or . . .wholly incredible." *Denton*, 504 U.S. at 1733, 112 S.Ct. at 33. Reath's Complaints allege not only that Warden Weber ordered prison employees to drug Reath and then sent other inmates to his cell to sexually assault him, but he also alleges the entire U.S. Government (including the federal Judiciary, which he asserts is "racist, homosexual, and evil" ) engaged in a conspiracy to use biological weapons to murder inmates and to force sex slavery upon them. Reath further alleges the conspiracy included the transfer of a prison employee from the penitentiary to the county jail before Reath transferred to the jail. Reath claims the sole purpose for the employee's transfer was the continuation of "torture or sex slavery" upon Reath and that again, the "whole U.S. Government" was involved in the plan.

The factual allegations in Reath's Complaints and accompanying papers cross the boundary from the unlikely into the delusional. For this reason, his Complaints should be dismissed on screening as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### 2.     Reath Has Failed to Exhaust his Administrative Remedies

In both of his Complaints, Reath admits he completed only the first step of the SDSP's three-step grievance process but did not appeal his grievance to the highest level possible.[4] In one of his Complaints, he explained "because they won't let me they never let me past count 1 so I started using bad language to put it on record." In the other Complaint, Reath explained "they all was rejects my second step to the grievance."

---

[4] The grievance procedure at the SDSP is a three step process: Informal resolution Request, Request for Administrative Remedy, and appeal to the Secretary of Corrections. *See* http://doc.sd.gov/about/policies/documents/AdministrativeRemedyforInmates.pdf.

5

42 U.S.C. § 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The prisoner must exhaust his administrative remedies even if the precise relief he seeks in his § 1983 lawsuit is not available through the prison grievance system. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 1824, 149 L.Ed.2d 958 (2001). Also, although § 1997e(a) refers to "prison conditions," the United States Supreme Court has interpreted that phrase to mean "the PRLA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12, (2002). " . . [A] remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a) . . . " *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)(internal punctuation and citations omitted). Reath, however, does not claim prison staff prevented him from availing himself of the prison grievance procedures, but rather that he or they predicted he would not be successful. An inmate's subjective belief or prediction that he will not be successful does not render his administrative remedies unavailable and does not relieve him from his obligation to exhaust. *Lyon v. Vande Krol*, 305 F.3d 806, 809-10 (8th Cir. 2002). Reath's Complaints must alternatively be dismissed because of his admitted failure to exhaust administrative remedies.

### 3.     The Filing Fee

If Reath's suits had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee. Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed. That Reath's cases are dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee. *In Re: Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). The obligation to pay a filing fee accrues the moment a plaintiff files his Complaint with the Court, and it cannot be avoided merely because the case is eventually dismissed. *See also In Re: Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed because "the PRLA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). Any filing fees paid to date, therefore, will not be refunded to Reath and he remains

6

responsible for payment of the entirety of the fee.

## CONCLUSION, RECOMMENDATION AND ORDER

Based on the foregoing,

It is **ORDERED**:

(1) Reath's above-captioned civil rights Complaints, CV 12-4053 and CV 12-4059 shall be consolidated, and one filing fee shall be assessed. All further filings shall be in CV 12-4053.

(2) Reath's Motion for *in forma pauperis* status (Doc. 2) is GRANTED.

(3) Reath remains responsible for the balance of the $350 fee; the institution having custody of Reath is hereby directed that whenever the amount in Reath's trust account exceeds $10.00, monthly payments that equal 20% of the funds credited the preceding month to Reath's trust account shall be forwarded to the U.S. District Court Clerk's Office pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee is paid in full.

A careful review of Reath's Complaints in CV 12-4053 and CV 12-4059 and accompanying documents, along with the relief he seeks in both cases leads to the conclusion that they are frivolous pursuant to *Denton v. Hernandez*, 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). Reath has likewise failed to exhaust his administrative remedies. It is therefore respectfully **RECOMMENDED** to the District Court that

(4) Plaintiff's Complaints be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).

Reath is advised that, should the District Court adopt this recommendation, said dismissal shall constitute Reath's third "strike" for purposes of 28 U.S.C. § 1915(g) which provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The Court notifies Reath that should the District Court adopt this recommendation, all future cases Reath wishes to file in this Court or any other Court of the United States, except cases in which Reath is "under imminent danger of serious physical injury" as provided in 28 U.S.C. § 1915(g), must be accompanied by the entire filing fee.

Dated this 14 day of September, 2012.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, CLERK

By: _____, Deputy
(SEAL)

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)